IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,                    CASE NO. 98 cr. 1053 (JSR)

                                            MOTION TO REDUCE SENTENCE
              v.                                   PURSUANT TO
                                            18 U.S.C.  §3582(c)(1)(A)(i)

JUAN CUEVAS

_____Defendant.

**Introduction**

The defendant, Juan Cuevas, through his attorney Donald duBoulay ,

respectfully moves this Court pursuant to the newly-amended 18 U.S.C.

§3582(c)(1)(A)(i) for an order reducing his sentence to time served based on

his poor and deteriorating physical health and functional impairments that

substantially diminishes his ability to provide self-care within the

environment of a correctional facility. Juan Cuevas'circumstances satisfy the

"extraordinary and compelling reasons' standard under §3582(c)(1)(A)(i), as

elaborated by the Sentencing Commission in U.S.S.G. §1B1.13. After

considering the applicable factors set forth in 18 U.S.C.  §3553(a), we

respectfully request that the Court reduce Juan Cuevas' sentence to time

served and modify the terms of supervised release to accommodate his

eventual deportation to the Dominican republic.

**Jurisdiction**

On December 21, 2018, the President signed the First Step Act into law. Among the criminal justice reforms, Congress amended 18 U.S.C. §3582(c)(1)(A)(i) to provide the sentencing judge jurisdiction to consider a defense motion for reduction of sentence based on extraordinary and compelling reasons whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier [.]" First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). In this case, Juan Cuevas has fully exhausted his administrative remedies with the Bureau of Prisons. The Government does not contest that Cuevas's has exhausted his avenues of administrative review.

**Sentence Reduction Authority under 18 U.S.C.  §3582(c)(1)(A)(i)**

This Court has discretion to reduce the term of imprisonment imposed in this case based on §3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C.  §] 3553(a) to the extent they are applicable, if it finds that . . .  extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]" In 28 U.S.C. § 994(t), congress delegated to the Sentencing Commission the authority to "describe

2

what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."

As relevant here, the criteria for determining whether there are "extraordinary and compelling reasons" for relief are contained in U.S.S.G. § 1B1.13 for the purpose of this motion they are as follows [the]:

A)  Medical Condition of the Defendant.-

(ii) The defendant is-

(I)      suffering from a serious physical or medical condition

(II)     suffering from a serious functional or cognitive impairment, or

(III)     experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

D)      Other Reasons.-as determined by the director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13. comment. N.1(**). The Commission's standard has parallels under the Bureau of Prisons (BOP) program statement on compassionate release PS 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§3582 and* 4205(g), (Jan. 17, 2019) (providing compassionate release consideration for inmates with a debilitated Medical Condition, capable of limited self-care and is confined to a bed or wheel chair more than 50% of waking hours). Under the First Step

Act, the BOP's program statement retains relevance only to the extent that its
criteria are broader than the standards set by the Commission. U.S.S.G. §
1B1.13, comment. N. 1(D)(recognizing that the Director of the BOP can
designate additional "extraordinary and compelling reason other than, or in
combination with, the reasons described in" the commentary).

Initially sentenced to prison on February 24, 2003, following his
arrest on July 6, 2002, Mr. Cuevas entered prison as a paraplegic, paralyzed
from the waist down. In the ensuing seventeen years he has developed
several chronic conditions including high body mass index, diabetes mellitus,
hypertension, hyperlipidemia and glaucoma.  He has had cataract surgery
and suffers from left eye uveitis. He was hospitalized for almost six weeks to
treat second toe osteomyelitis and a decubitus ulcer. He was hospitalized
again in 2018, after breaking his fibula in both legs when his wheelchair
tipped over when he was unable to navigate a curb. His vision is currently 70
% of what it was upon entering prison.

Mr. Cuevas physical condition and the consequent functional limitations
substantially negatively impact his ability to provide self-care within the
environment of a correctional facility. He does not have the ability to function
in a correctional facility he merely has the ability to survive in a correctional
facility.

**Relevant Facts and Procedural History**

On February 24, 3003 Mr. Cuevas was sentenced to a total of 390
months in prison upon his plea of guilty to conspiring to import 5 or more

4

kilograms of cocaine, conspiracy to commit money laundering and money laundering. His Guideline range was 360 to life. Following a remand to the district court pursuant to *United States v. Crosby*, 390 F.3d103 (2d Cir 2005), Mr. Cuevas was resentenced to a lesser term of 360 months.  Upon his application to be resentenced in light of the retroactive drug amendments to the U.S. Sentencing Guidelines 18 U.S.C. 3582 (c)(2) and after taking into consideration the policy factors at USSG §1B1.10 and the sentencing factors in 18 U.S.C. §3553 (a) the court  resentenced Mr. Cuevas to a  term of 300 months on December 30, 2015.

Mr. Cuevas filed his initial application for Compassionate release to the appropriate authorities in the BOP on December 23, 2015, based upon the criteria set forth in the Bureau of Prisons program statement 5050.49. That statement list's various criteria for consideration of compassionate release of elderly inmates or of those significantly debilitated. The primary factors include whether the inmate is 70 years and has served at least 30 years or whether the inmate suffers from a debilitating condition and is confined to a wheel chair or bed for over 50% of his waking hours.  The program statement explicitly recommends that the Bureau review and consider applications for compassionate release if an identified inmate meets the suggested criteria.

Mr. Cuevas' application for a reduction in sentence based upon compassionate relief was based upon the hardship that continued confinement in a prison facility imposed on him due to his paraplegia, under

5

the debilitated inmate criteria for compassionate release. His application was denied on the basis that he did not meet the criteria for compassionate release of an *elderly* inmate. The Medical Officer's recommendation to deny the compassionate relief notes that the "permanent paralysis below the waist and loss of urine and bowel control function limit his ability to function in a correctional facility", the very criteria upon which his application for compassionate release was based. (EX. A). Thus the denial of his initial application for compassionate release was incorrectly considered and decided by the staff of the Bureau of Prisons.

Mr. Cuevas second application for compassionate release and a reduction in sentence was made on April 13, 2017. In this application based upon his having suffered from a debilitating injury from which he will not recover Mr. Cuevas lists several of the physical ailments from which he suffers. Although this application meets all criteria for consideration of compassionate release per BOP program statement on compassionate release PS 5050.49, his application was denied on July 7, 2017. The ostensible basis for the denial was that the sentencing court's knowledge of Cuevas' physical condition at sentencing and the ultimate sentence should be accorded deference in the consideration of compassionate release. (EX B).

Juan Cuevas has been in custody in connection with the present offenses since his arrest on July 6, 2002, which amounts to over seventeen years of actual incarceration. As will be described later his conduct in prison has been exemplary.

When originally sentenced for the charged offenses in 2003, Mr. Cuevas physical condition was that of a paraplegic.  That is the complete paralysis of the lower half of his body.  The court noted that condition but did not make any accommodation in the sentence imposed for his paraplegia, noting the severity of his offenses, and the ability of the Bureau of prisons to accommodate his physical well-being.

In the intervening years, Mr. Cuevas physical condition has severely deteriorated.  As a result of his paraplegia and paralysis from his waist down, he has a catheter attached to his left leg so that he can urinate (involuntarily), and he has to manually assist his bowel movements with the aid of lubricants. In 2010 he was diagnosed with Diabetes Mellitus, and Hypertension and Hyperlipidemia (abnormally high blood pressure). In 2005 he had bilateral cataract surgery (surgery in both eyes to remove cataracts). Whether as a result of that surgery, or for some other reason, Cuevas subsequently underwent surgery for left eye lens dislocation (left eye Uveitis), which has left him with cloudy vision and diminished acuity of vision in the left eye.  He also has been diagnosed with glaucoma. He has been informed that he has lost 30% of the vision he had when he entered BOP custody.

In April 2017 Mr. Cuevas after many months of complaining of a sore on his toes, was hospitalized for right toe Osteomyelitis (an infection of the toe bone caused by an infection that spread through the bloodstream).  In a person with feeling in his lower extremity this would be a very painful

condition which untreated could have cause the loss of the toe. Cuevas was eventually hospitalized and treated intravenously with antibiotics and released from the hospital five weeks later.

More significantly, throughout his earlier BOP incarcerations, including at Fort Devin (a medical facility), Allenwood FCI, and prior to his arrival at Fort Dix, Cuevas was afforded a medical companion. That is an inmate assigned to look out for him, to carry his meal tray to the dining hall, or carry food to the microwave , to help him make his bed, and to push his wheelchair to travel longer distances such as when he goes to the commissary, or law library.  After his arrival at Fort Dix, his current residence on February 28, 2014, his request for a companion was denied, instead the Bureau permitted his brother Jose who was also residing at Fort Dix to transfer to Juan's side of the Compound in order to assist him.

In 2015 Jose Cuevas was transferred out of Fort Dix and subsequently deported. Mr. Cuevas has not had an inmate companion since. Instead he relies on the favors of other inmates to travel to the dining room, to clean his room or to carry items he purchases from the commissary and to perform other tasks of personal hygiene.

On September 28, 2018 when returning from the visiting room, and wheeling his wheelchair toward his housing unit, Cuevas struck an uneven part of the sidewalk, resulting in his being catapulted from the wheelchair and fracturing the tibia and fibula of his left leg. He also fractured his right ankle in two parts.  On October 4, 2018 Cuevas underwent surgery to repair

8

the break to his ankle at the Robert W. Johnson hospital, and returned to Fort Dix on October 7, 2018. (EX D).

It is abundantly clear that Mr. Cuevas physical deterioration is accelerating and there exists "extraordinary and compelling reason" for a sentence reduction. As Medical Officer Ravi Sood states on two occasions while denying his previous request for compassionate release, his permanent paralysis limit his ability to function in a correctional facility. He manages what he can of his activities of daily living with the sometime aid of inmates. The physical condition he now suffers though is far more severe that the debilitating paraplegia he had when he was initially sentenced. The Bureau continually states that as the reason for the denial of all of his previous requests for a reduction in sentence that the sentencing Court was aware of the Mr. Cuevas physical limitations and nonetheless sentenced him accordingly. Yet the physical disabilities and limitations Cuevas now endures were not passed on by the court at sentencing. As a result of not having a companion to negotiate long distances he fell out of his chair and broke his Tibia in both legs, He has lost significant vision in his eyes. The impact of the aging process has apparently speeded up for a man in his situation, as he is suffering from the effects of Glaucoma and Hypertension and a host of other ailments.

This court in a subsequent sentencing proceeding acknowledged that while aware of Cuevas paraplegia at the initial sentencing did not focus on the fact that a day in prison for him is a bit more punitive than it might be

otherwise.  Thus this court for the first time will have the opportunity to consider the impact of Cuevas debilitating physical condition in his request for compassionate release.  (EX E)

**Argument**

### A.   Juan Cuevas Has Established Extraordinary And Compelling Reasons That Warrants A Sentence Reduction.

Under U.S.S.G. § 1B1.13, commentary note 1, extraordinary and compelling reasons for a sentence reduction exist when 'The defendant is suffering from a serious physical or medical...or functional impairment that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. Juan Cuevas satisfies this simple criterion. The very simple act of fetching his food requires the aid of an inmate helper, or of making his bed. His ability to maintain his hygiene requires the aid of an inmate helper. The list can go on and on. The very real accident where his wheelchair flipped over resulting in broken bones in two legs established once and for all that his physical limitations are ample evidence that he is unable to self-care in a correctional institution.

Under the present statutory regime, the existence of extraordinary and compelling circumstances confers on this Court the authority to consider the relevant 18 U.S.C. §3553(a) factors and determine whether the circumstances warrant a sentence reduction.

This Court should not give weight to the BOP's compassionate release denial because it was based solely on sentencing-related factors better left to

the Court's discretion. The statutory responsibility to decide whether a motion to reduce should be granted falls to this Court, not the BOP. Decisions about sentencing "[should] not be left to employees of the same Department of Justice that conducts the prosecution." *Setser v. United States*, 566 U.S. 231, 242 (2012); *see also id.* at 240 ("[T]he Bureau is not charged with applying § 3553(a)."). Here, the BOP recognized that Juan Cuevas circumstances present an extraordinary and compelling reason that triggers sentence reduction eligibility. Under § 3582(c)(1)(A) and § 1B1.13, it is the Court, not the BOP, that is charged with considering the "extraordinary and compelling reasons," then evaluating whether the sentencing factors under § 3553(a)—including public safety under the standard in 18 U.S.C. § 3142(g)—warrants a reduction in sentence.

The First Step Act's amendment to § 3582(c)(1)(A) reflects the congressional aim to diminish the BOP's control over compassionate release by permitting defendants to file sentence reduction motions directly with the sentencing court. The BOP's administration of the compassionate release program has long been the subject of criticism. The Department of Justice's Office of the Inspector General has repeatedly found that the program results in needless and expensive incarceration and is administered ineffectively. Department of Justice, Office of the Inspector General, *he Federal Bureau of Prisons' Compassionate Release Program*, at 11 (April 2013)("The BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered.");

Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons,* at 51 (May 2015)("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population, few aging inmates have been released under it."). Aside from the expense and inefficiency, the human costs of the BOP's stinting view of compassionate release has been documented by prisoner advocates. Human Rights Watch & Families Against Mandatory Minimums, *The Answer Is No: Too Little Compassionate Release in US Federal Prisons* (Nov. 2012).

With the enactment of the First Step Act, the authority shifts to this court to decide whether the undisputed extraordinary and compelling reasons warrant a sentence reduction in this case without deference to any administrative agency.

**B.     With Full Consideration Of The § 3553(a) Factors, Juan Cuevas Time Served Constitutes A Sentence Sufficient But Not Greater Than Necessary to Accomplish The Goals of Sentencing.**

Under all of the circumstances in this case, the Court should conclude that the time that Juan Cuevas has already served is sufficient to satisfy the purposes of sentencing. Under *Pepper v. United States,* 562 U.S. 476, 490-93 (2011), the Court can, and indeed must, consider post-offense developments under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "sheds light on the likelihood that [the defendant] will engage in future criminal conduct." *Id.* at 492.

Here, the Commission's policy statement recognizes that Cuevas's circumstances are "extraordinary and compelling," which should weigh heavily in the sentencing equation. Although the circumstances of the present offense and Cuevas's criminal history qualified him for the serious sentence that this Court originally imposed, the myriad certificates of educational achievement and advanced studies are evidence that has thoroughly rehabilitated himself and poses no threat to the community at large. (Ex F) As recognized in the Sentencing Commission's policy statement on physical condition, extraordinary impairments provide reasons for downward departures for "seriously infirm" defendants, including to home detention at initial sentencing "as efficient as, and less costly than, imprisonment." U.S.S.G. § 5H1.4; *see also* 18 U.S.C. § 3553(a)(2)(D) (consideration of providing needed medical care in the most effective manner). Juan Cuevas physical and mental condition following his health decline realistically forecloses a probability of dangerous recidivism. Further, at 57 years old, Juan Cuevas age places him in the class of prisoners least likely to recidivate. United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (December 2017). Having undergone a very long period of incarceration, and having experienced physical and mental deterioration, Juan Cuevas does not constitute a danger to any other person or to the community.

The Court should conclude that the seventeen years already served has sufficiently met the purposes of sentencing after considering Juan Cuevas  extraordinary and compelling circumstances.

**Conclusion**

For the foregoing reasons, Juan Cuevas respectfully requests that the Court grant reduction in sentence to time served and amend the conditions of supervised release as requested.

Respectfully submitted this 13th day of September, 2019

Donald D. duBoulay
Attorney for Defendant Juan Cuevas